305 Ga. 242
FINAL COPY

S18A1299.  BENTON v. THE STATE.

BENHAM, Justice.

Appellant Marquavis Benton was convicted of murder and related offenses arising out of the shooting death of Brian Whitfield.[1]  On appeal, Appellant contends that the evidence was insufficient to support his convictions for malice murder and armed robbery and that the trial court erred in failing to charge the jury on voluntary manslaughter.  Finding no error, we affirm.

Viewing the record in a light most favorable to the verdicts, the evidence adduced at trial established as follows.  On the evening of December 5, 2014,

---

[1] In February 2015, a Gwinnett County grand jury indicted Appellant, Kathryn Voight, and Marckell Honeycutt on the charges of malice murder, felony murder predicated on armed robbery, felony murder predicated on aggravated assault, armed robbery, aggravated assault, and theft by taking (theft of the victim's truck). Appellant was tried alone, and, following a trial conducted May 15-19, 2017, a jury found him guilty on all counts.  Appellant was sentenced to consecutive terms of life imprisonment for malice murder and armed robbery, as well as a consecutive term of ten years' probation for theft by taking; all other counts were merged or vacated by operation of law.  Appellant filed a motion for new trial on May 23, 2017, which he later amended in December 2017.  Following a hearing, the trial court filed an order denying the amended motion on March 2, 2018; Appellant filed a notice of appeal on March 23, 2018.  This case was docketed to the August 2018 term of this Court and was thereafter submitted for a decision on the briefs.

the victim arrived at a hotel in DeKalb County, Georgia, to purchase drugs and procure the services of a prostitute. After purchasing crack cocaine, the victim was introduced to Kathryn Voight, but had insufficient cash for her services; he promised her, however, that there were items of value in his Gwinnett County home. Shortly thereafter, a group of four — the victim, Voight, Appellant, and Voight's friend, Marckell Honeycutt — set out for the victim's residence in the victim's truck. According to Voight, Honeycutt joined the excursion because the victim found her attractive, and Appellant was included to provide security. Hotel surveillance recorded the four individuals leaving the premises in the victim's truck.

Once at the house, the victim, who was inebriated and had been using crack cocaine, apparently indicated that he wanted sex for free and that he did not have a condom. At some point, Appellant and the victim ended up on the second floor of the residence where they had a physical altercation, during which Appellant pistol-whipped the victim; the pair returned to the main level, with Appellant holding the bloodied victim at gunpoint. The jury heard testimony that Appellant asked the victim "was there anything else," to which the victim responded that "there was another gun in the shed." Appellant

2

instructed the two women to grab items from the house, and the two men then proceeded to the shed. Moments later, Voight and Honeycutt heard gunshots from the shed and observed Appellant running back toward the house. When back at the house, Appellant told the women to collect what they were taking from the residence; a television, jewelry, and numerous firearms were stolen. The party of three fled in the victim's truck, and they were recorded by surveillance cameras returning to the hotel and unloading various stolen items from the truck. The victim's body was found at the end of his driveway a few hours later, and his death was described as a homicide resulting from gunshot wounds. The medical examiner opined that the victim's injuries were consistent with his having been shot as he moved away from the shooter. Sometime after the murder, investigators were contacted by a tipster who led them to the victim's truck and who later surreptitiously recorded Appellant making incriminating statements concerning the murder.

1. Appellant first contends that the evidence was insufficient to sustain his convictions for malice murder and armed robbery. When evaluating the sufficiency of evidence, the proper standard for review is whether a rational trier of fact could have found the defendant guilty beyond a reasonable doubt. See

3

Jackson v. Virginia, 443 U. S. 307 (99 SCt 2781, 61 LE2d 560) (1979). "This Court does not reweigh evidence or resolve conflicts in testimony; instead, evidence is reviewed in a light most favorable to the verdict, with deference to the jury's assessment of the weight and credibility of the evidence." (Citation and punctuation omitted.) Hayes v. State, 292 Ga. 506, 506 (739 SE2d 313) (2013).

(a) Appellant asserts that there was insufficient evidence to prove that he acted with malice or with an intent to kill. We disagree.

"A person commits the offense of murder when he unlawfully and with malice aforethought, either express or implied, causes the death of another human being." See OCGA § 16-5-1 (a). "The State, of course, must prove malice beyond a reasonable doubt to convict someone of malice murder," Benson v. State, 294 Ga. 618, 620 (754 SE2d 23) (2014), as "malice incorporates the intent to kill," Latimore v. State, 262 Ga. 448, 450 (421 SE2d 281) (1992). "Express malice is that deliberate intention unlawfully to take the life of another human being which is manifested by external circumstances capable of proof[,]" while malice is implied "where no considerable provocation appears and where all the circumstances of the killing show an abandoned and

4

malignant heart." OCGA § 16-5-1 (b). The malice necessary to establish malice murder may be formed in an instant, as long as it is present at the time of the killing. See Platt v. State, 291 Ga. 631, 633 (732 SE2d 75) (2012). "It is for a jury to determine from all the facts and circumstances whether a killing is intentional and malicious." White v. State, 287 Ga. 713, 715 (1) (b) (699 SE2d 291) (2010).

Here, the jury heard testimony that Appellant physically assaulted the victim, held him at gunpoint, shot him as he tried to get away, and left him at the residence after shooting him. This evidence was sufficient to support a finding of malice murder by the jury. See Dupree v. State, 303 Ga. 885 (1) (815 SE2d 899) (2018) (sufficient evidence of malice murder where defendant physically assaulted victim before her death and left her to die); Moran v. State, 302 Ga. 162 (805 SE2d 856) (2017) (malice murder conviction upheld where evidence showed that defendant shot the victim in the back of the head as he tried to get away).

(b) As to his conviction for armed robbery, Appellant argues that the State failed to prove that the victim's property was taken from his person or presence and, further, that the State failed to prove that Appellant's use of force was

concomitant with the theft. These arguments are also without merit.

"A person commits the offense of armed robbery when, with intent to commit theft, he or she takes property of another from the person or the immediate presence of another by use of an offensive weapon, or any replica, article, or device having the appearance of such weapon." OCGA § 16-8-41 (a). However, for over a century, Georgia courts have interpreted the "immediate presence" standard broadly; our case law reflects that, generally speaking, the victim's physical presence at the theft is not required for armed robbery "if what was taken was under his control or his responsibility and if he was not too far distant." Welch v. State, 235 Ga. 243, 245 (219 SE2d 151) (1975). See also Heard v. State, 287 Ga. 554 (1) (697 SE2d 811) (2010) (recognizing the same principle); Clements v. State, 84 Ga. 660 (11 SE 505) (1890). Here, the victim remained on the property during the robbery; further, the items that were stolen were taken from the victim's residence, which was under his control. See Welch, 235 Ga. at 246 (recognizing that a "person may be deemed to protect all things belonging to the individual, within a distance, not easily defined, over which the influence of the personal presence extends"). Moreover, Appellant cannot be absolved of armed robbery simply because he forcibly removed the

6

victim from the residence during the course of the theft.  See Clements, supra;

Maddox v. State, 174 Ga. App. 728 (1) (330 SE2d 911) (1985).

As to the question of force, the State is required to prove "beyond a reasonable doubt that the defendant's use of the weapon occurred prior to or contemporaneously with the taking." Bates v. State, 293 Ga. 855, 857 (750 SE2d 323) (2013).  Here, the State adduced evidence that Appellant pistol-whipped the victim, held him at gunpoint, demanded to know the location of property, and then directed Voight and Honeycutt to collect items from the house; Appellant forcibly removed the victim from the residence and then, after shooting him in an adjacent shed, assisted with the completion of the theft. There seems to be no contention that the thefts occurred *before* the use of force. "Where, as here, the evidence is sufficient to authorize a finding that the theft was completed after force was employed against the victim, a conviction for armed robbery is authorized[.]" Francis v. State, 266 Ga. 69, 70 (463 SE2d 859) (1995).  See also Bates, supra.

Accordingly, after having reviewed the record, we find that the evidence as discussed above was sufficient to enable a rational trier of fact to find Appellant guilty beyond a reasonable doubt of the crimes for which he was convicted. Jackson v. Virginia, supra.

7

2. Appellant also asserts that he was entitled to have the jury instructed on voluntary manslaughter. To support such a charge, there must be evidence that the accused "'acted solely as the result of a sudden, violent, and irresistible passion resulting from serious provocation sufficient to excite such passion in a reasonable person.'" (Citation and punctuation omitted.) Smith v. State, 296 Ga. 731, 737 (770 SE2d 610) (2015). Only "slight evidence" of provocation is necessary to require a trial court to instruct on voluntary manslaughter. Id.

Appellant contends that his earlier physical altercation with the victim, along with his concerns that the victim was intoxicated and acting unpredictably, was sufficient evidence to justify a jury charge on voluntary manslaughter. However, "neither fear that someone is going to pull a gun nor fighting are the types of provocation which demand a voluntary manslaughter charge." Smith, 296 Ga. at 737. In short, there is simply no indication that the unarmed victim — who was being held at gunpoint — committed an act of serious provocation sufficient to prompt Appellant to shoot him numerous times. See Keita v. State, 285 Ga. 767, 770 (2) (684 SE2d 233) (2009). Accordingly, this argument is without merit.

Judgment affirmed. All the Justices concur, except Ellington, J., disqualified.

8

Decided February 18, 2019.

Murder. Gwinnett Superior Court. Before Judge Hutchinson.

Brown & Gill, Angela B. Dillon, for appellant.

Daniel J. Porter, District Attorney, Lee F. Tittsworth, Courtney R. Spicer, Assistant District Attorneys; Christopher M. Carr, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Vanessa T. Sassano, Assistant Attorney General, for appellee.