**FOURTH DIVISION**
**DILLARD, P. J.,**
**MERCIER and COLVIN, JJ.**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.** **https://www.gaappeals.us/rules**

*DEADLINES ARE NO LONGER TOLLED IN THIS COURT. ALL FILINGS MUST BE SUBMITTED WITHIN THE TIMES SET BY OUR COURT RULES.*

**July 22, 2021**

# In the Court of Appeals of Georgia

A21A0710. GEE v. THE STATE.

COLVIN, Judge.

After a jury trial, Antonio Maurice Gee was convicted of burglary in the first degree, aggravated battery (2 counts), aggravated assault (4 counts), armed robbery (2 counts), aggravated stalking, false imprisonment (2 counts), cruelty to children in the first degree (2 counts), and cruelty to children in the third degree (2 counts). Gee appeals from the denial of his motion for new trial, arguing, inter alia, that the evidence was insufficient to support his two armed robbery convictions. For the following reasons, we affirm Gee's armed robbery conviction under Count 9, but reverse his armed robbery conviction under Count 8 and remand for resentencing.

When evaluating the sufficiency of evidence, the proper standard for review is whether a rational trier of fact could have found the defendant guilty beyond a

reasonable doubt. See *Jackson v. Virginia*, 443 U.S. 307 (99 SCt 2781, 61 LEd2d 560) (1979). "This Court does not reweigh evidence or resolve conflicts in testimony; instead, evidence is reviewed in a light most favorable to the verdict, with deference to the jury's assessment of the weight and credibility of the evidence." (Citation and punctuation omitted.) *Hayes v. State*, 292 Ga. 506, 506 (739 SE2d 313) (2013). When a conviction is based upon circumstantial evidence,

> questions as to reasonableness are generally to be decided by the jury which heard the evidence and where the jury is authorized to find that the evidence, though circumstantial, was sufficient to exclude every reasonable hypothesis save that of guilt, the appellate court will not disturb that finding, unless the verdict of guilty is insupportable as a matter of law.

(Citations and punctuation omitted.) *Kiser v. State*, 327 Ga. App. 17, 21 (3) (755 SE2d 505) (2021).

So viewed, the evidence shows in December 2016, Gee was released from prison where he was incarcerated for an aggravated stalking conviction involving Jessica Crutchfield, the mother of his two children. Two days after his release, Gee spent the morning communicating with Crutchfield over social media. Their communications ended when Gee called Crutchfield to tell her that he was coming

2

to her home to kill her. At about 5:00 p.m. that day, Gee came to Crutchfield's home, which she shared with her two children and 70-year-old grandmother, Janice Bauer. As Crutchfield dialed 911, Gee smashed through the back patio door with an umbrella stand. As soon as Gee broke in the door, the two women took the children upstairs with them to hide in a closet. At the time, B. C. was a medically fragile four-month-old and A. C. was 18 months old.

After searching the house, Gee found the two women and the children hiding in the closet and physically assaulted both women while they used their bodies to protect the children. Gee beat Crutchfield with his fists. When the cellphone that Bauer was holding began to ring, Gee grabbed it and threw it across the room. He then assaulted her by repeatedly punching her in the face so that Bauer required facial reconstructive surgery. Gee broke Bauer's jaw in two places, her palate, both of her cheekbones, and her nose.

Hoping to spare Bauer from further injury, Crutchfield told Gee that she would go with him if he would leave the kids with her grandmother. Gee took Crutchfield and the toddler, A. C., downstairs. Gee then took a taser from Crutchfield and tasered her twice, the second time rendering her unconscious. Gee then went upstairs and attempted to attack Bauer, who was holding the infant, with a small bedside table.

3

Bauer blocked it with her body. During these assaults, Gee also tased Bauer and the infant, B. C., rendering him unconscious to the point that officers thought that he was dead when they arrived at the scene.

When Crutchfield regained consciousness, Gee was standing over her and punching her. Gee then stabbed Crutchfield in the arm and leg with a butterfly knife that belonged to her and was attached to her car keys. Crutchfield testified that she believed that she had left her keys downstairs, and that at the time, the butterfly knife was attached to the keyring. Crutchfield screamed when it appeared that Gee was attempting to stab her daughter, A. C., but he stabbed her in the leg instead as she moved to protect the child. Police officers then kicked the door in. Crutchfield and A. C. were taken outside while officers cleared the first level of the house. As they were about to go upstairs, Bauer came downstairs with the unconscious infant, B. C., in her arms. As a result of Gee's assaults, Crutchfield sustained a broken nose and a fractured jaw, and lost multiple teeth.

After the victims were evacuated, the police withdrew from the home and a five-hour standoff occurred before Gee surrendered. Officers then searched the house and discovered the butterfly knife on a counter of the downstairs bathroom. After

4

being *Mirandized*, Gee stated that he could not remember anything that happened and that he suffered from blackouts.

On December 13, 2016, Tonya Bauer, Crutchfield's aunt, found Crutchfield's car keys, two cell phones belonging to Crutchfield, a cell phone belonging to Bauer, three of Bauer's credit cards, Bauer's smart watch and Crutchfield's Department of Corrections identification card hidden underneath a hope chest in the garage. The police saw what they believed was blood on the back of a car in the garage when they arrived to collect the evidence.

Bauer testified that she generally kept her car keys and credit cards in her purse in her bedroom and her smart watch in a dresser drawer. Both Crutchfield and Bauer denied that they placed their items in the garage. Neither Crutchfield nor Bauer saw Gee take the items. Gee did not testify at trial.

1. In several related enumerations, Gee argues that the trial court erred in denying his motion for a directed verdict and motion for new trial on the grounds that the evidence was insufficient to support his conviction for armed robbery (Count 8). Gee argues that there was no evidence to show that Gee used the knife to effectuate the taking of the car keys. We agree.

Gee was charged with armed robbery in Count 8 of the indictment: "with the intent to commit a theft, did unlawfully take car keys, property of Jessica Crutchfield, from the immediate presence of Jessica Crutchfield, by the use of a knife, an offensive weapon." Armed robbery occurs when the defendant, "with intent to commit theft, . . . takes property of another from the person or the immediate presence of another by use of an offensive weapon, or any replica, article, or device having the appearance of such weapon." OCGA § 16-8-41 (a). "The State therefore was required to prove beyond a reasonable doubt that [Gee's] use of the [knife] occurred prior to or contemporaneously with the taking" of the keys. (Citation and punctuation omitted.) *Harrington v. State*, 300 Ga. 574, 577 (2) (a) (797 SE2d 107) (2017). See also *Attaway v. State*, 332 Ga. App. 375, 377 (1) (a) (772 SE2d 821) (2015) (evidence insufficient to support an armed robbery conviction because defendant had already taken possession of laptop before brandishing weapon to effectuate his escape).

The evidence at trial showed that Crutchfield testified that she believed that she had left her knife, still attached to her car keys, downstairs before Gee entered the home. The evidence showed that Gee entered the home and rummaged around downstairs before coming upstairs to find Crutchfield and Bauer hiding in a closet. After assaulting them upstairs, Gee then took Crutchfield back downstairs where he

6

then rendered her unconscious by use of a taser. When Crutchfield recovered consciousness, Gee was standing over her and punching her. He then stabbed her in the arm and leg with a butterfly knife that had been attached to her key ring. The record does not contain testimony that Crutchfield saw Gee take the keys or the knife. "Because it is at least equally likely that [Gee] took the [knife and keys] before rather than after encountering the victim, the evidence was insufficient to support beyond a reasonable doubt that" Gee used a knife to take the keys from Crutchfield. *Harrington*, 300 Ga. at 577-578 (2) (a) (evidence was insufficient to support armed robbery conviction when it was equally possible to infer that defendant took possession of a cell phone *before* the victim interrupted the burglary). Accord *Fox v. State,* 289 Ga. 34, 36-37 (1) (b) (709 SE2d 202) (2011) (circumstantial evidence was insufficient to support to support an armed robbery conviction when it could support two equally reasonable hypothesis – that the defendant took the items *before* confronting victim with a weapon or *after* confronting victim). Accordingly, we reverse Gee's armed robbery conviction under Count 8 and remand this case for resentencing.

2. In several related enumerations, Gee argues that the trial court erred in denying his motion for a directed verdict and motion for new trial on the grounds that

the evidence was insufficient to support his conviction for armed robbery (Count 9). We disagree.

Count 9 of the indictment charged Gee with armed robbery as follows: "with the intent to commit a theft, [Gee] did unlawfully take credit cards, a smart watch, and two (2) cell phones, property of Janice Bauer, from the immediate presence of Janice Bauer, by the use of a knife, an offensive weapon[.]"

As noted above, "[a] person commits the offense of armed robbery when, with intent to commit theft, he or she takes property of another from the person or the immediate presence of another by use of an offensive weapon[.]" OCGA § 16-8-41 (a). However, "Georgia courts have interpreted the 'immediate presence' standard broadly; our case law reflects that, generally speaking, the victim's physical presence at the theft is not required for armed robbery if what was taken was under his control or his responsibility and if he was not too far distant." (Citation and punctuation omitted.) *Benton v. State*, 305 Ga. 242, 244-245 (1) (b) (824 SE2d 322) (2019). Further, Gee "cannot be absolved of armed robbery" simply because his actions caused Bauer to flee from the residence during the course of the theft. Id. In *Maddox v. State*, 174 Ga. App. 728 (330 SE2d 911) (1985), this Court upheld an armed robbery conviction when a storekeeper was forced to flee his store as a result of

8

defendant's armed presence there even though the cash from the store was not actually taken from the storekeeper himself or his immediate presence. Id. at 730 (1). See also *Booker v. State*, 242 Ga. App. 80, 82 (1) (a) (528 SE2d 849) (2000) (money found in victim's personal possessions in the apartment from which he leaped to escape from defendant was within his "immediate presence" within the meaning of OCGA § 16-8-41 (a)); *Merritt v. State*, 353 Ga. App. 374, 376 (1) (837 SE2d 521) (2020) ("when perpetrators forcibly cause the victim to be away from the immediate presence of the property at the time it is stolen, the offense of armed robbery can still be committed. A victim's flight . . . does not undermine an armed robbery conviction") (citations and punctuation omitted).

Here, the evidence showed that police officers were able to remove the victims from the house soon after Gee attacked Crutchfield with the butterfly knife. A five-hour standoff then occurred where Gee remained inside the home before he surrendered. Several days later, Bauer's credit cards, cell phones, smart watch and identification card were found hidden underneath furniture in the garage and investigating officers noticed blood stains nearby. Bauer testified that these items had been in her bedroom prior to Gee's attack. Here, the facts presented by the evidence do not provide a reasonable hypothesis that Gee was able to obtain the stolen items

9

prior to brandishing the weapon, and there is no contention that these thefts occurred *before* the use of the force. "Where, as here, the evidence is sufficient to authorize a finding that the theft was completed after force was employed against the victim, a conviction for armed robbery is authorized." (Citation and punctuation omitted.) *Benton*, 305 Ga. at 245 (1) (b). See *Merritt*, 353 Ga. App. at 376 (1) (To support an armed robbery, "the State must prove beyond a reasonable doubt that the use of the weapon occurred prior to or contemporaneously with the taking") (citation and punctuation omitted).

3. As a result of our holdings in Division 1 and 2, Gee's remaining enumerations of error are moot.

*Judgment affirmed in part and reversed in part. Dillard, P. J., and Mercier, J., concur.*