NOTICE: This opinion is subject to modification resulting from motions for reconsideration under Supreme Court Rule 27, the Court's reconsideration, and editorial revisions by the Reporter of Decisions. The version of the opinion published in the Advance Sheets for the Georgia Reports, designated as the "Final Copy," will replace any prior version on the Court's website and docket. A bound volume of the Georgia Reports will contain the final and official text of the opinion.

In the Supreme Court of Georgia

Decided: December 19, 2023

S23A0894. SCOGGINS v. THE STATE.

PETERSON, Presiding Justice.

Christopher Reid Scoggins appeals his convictions for murder and other offenses stemming from the shooting death of Stephanie Daniel.[1] He argues that the evidence was insufficient to support

---

[1] Daniel was killed on the night of July 5, 2015. On March 21, 2016, a Gordon County grand jury indicted Scoggins and co-defendant Fred Jason Charles for various crimes: malice murder, two counts of felony murder, aggravated assault, two counts of possession of a firearm by a convicted felon, theft by taking, conspiracy to commit arson in the second degree, and six counts of possession of a firearm during the commission of a felony. The case was tried before a jury in September 2016. The jury found both defendants guilty on all counts. Charles received a sentence of life without the possibility of parole for the malice murder count, as well as other sentences for additional counts. We affirmed Charles's convictions. See *Charles v. State*, 315 Ga. 651 (884 SE2d 363) (2023). On October 6, 2016, Scoggins was sentenced to life without parole for malice murder, plus a concurrent five-year sentence for possession of a firearm by a convicted felon, ten years consecutive for theft by taking, five years consecutive for conspiracy to commit arson in the second degree, and two five-year sentences for possession of a firearm during the commission of a felony, consecutive to the arson sentence and concurrent to one another. The other counts merged or were vacated by operation of law. Scoggins filed a motion for new trial on October 7, 2016, and amended the

certain of his convictions and that his trial counsel was ineffective for failing to request a jury instruction on concealing the death of another or hindering the apprehension of a felon.[2] We conclude that the evidence was sufficient as to all of the challenged convictions and that trial counsel did not perform deficiently by failing to request the cited instructions. We therefore affirm.

1. Scoggins first argues that the evidence was insufficient as a matter of constitutional due process to sustain his convictions for malice murder, possession of a firearm by a convicted felon, and possession of a firearm during the commission of a felony.[3] We

motion on April 9, 2018. The trial court held hearings on the motion on January 28, 2022, and March 17, 2022, and orally denied the motion at the close of the March 17 hearing. Scoggins filed a notice of appeal on April 4, 2022; the motion ripened when the trial court entered an order denying the motion for new trial on April 27, 2022. See *Southall v. State*, 300 Ga. 462, 464-467 (1) (796 SE2d 261) (2017). The case was docketed to this Court's August 2023 term of court and orally argued on November 7, 2023.

[2] Another enumeration of error, regarding evidence suggesting that Scoggins was part of a gang, was withdrawn by defense counsel at oral argument.

[3] Scoggins also argues that the evidence was insufficient as to the felony murder and aggravated assault charges, but because those counts merged or were vacated by operation of law, with no sentence being entered on them, such arguments are moot given our conclusion that the evidence was sufficient to sustain Scoggins's malice murder conviction. See *White v. State*, 287 Ga. 713, 714-715 (1) (a) (699 SE2d 291) (2010). We note that Scoggins does not challenge

2

disagree.

In considering a claim that evidence was insufficient in violation of federal due process under *Jackson v. Virginia*, 443 U.S. 307 (99 SCt 2781, 61 LE2d 560) (1979), "our review is limited to an evaluation of whether the trial evidence, when viewed in the light most favorable to the verdicts, is sufficient to authorize a rational trier of fact to find the defendant guilty beyond a reasonable doubt of the crimes of which he was convicted." *Goodman v. State*, 313 Ga. 762, 766 (2) (a) (873 SE2d 150) (2022) (citation and punctuation omitted). So viewed, the evidence admitted at trial is as follows.

On July 5, 2015, Fred Jason Charles was living with his father, Herbert Charles ("Herbert"), at Herbert's mobile home in Gordon County. Charles slept in an upstairs bedroom in the original part of the mobile home, while Herbert had a bedroom and living room in an addition to the home. Daniel, Charles's girlfriend, had been staying in the mobile home for several days. Daniel drove a dark-

the sufficiency of the evidence as to his convictions for theft by taking or conspiracy to commit arson.

3

colored Nissan Xterra.

Scoggins was with Charles throughout the day on July 5, and Charles was carrying a firearm. Sometime after lunchtime on July 5, Charles stopped at the house of a neighbor, James Hunter, driving an Xterra. Another man, whom Hunter did not recognize, stayed in the car. Charles showed Hunter a revolver and asked where he could shoot it. At dusk later that day, Charles briefly stopped by Hunter's home in the Xterra; the same man was with him. Additionally, Charles's friend Stephanie Baldwin identified Scoggins as being with Charles at a motel sometime between 10:00 p.m. and 11:00 p.m. on July 5. Charles showed Baldwin a firearm, and Baldwin saw a black Nissan Xterra in the parking lot that she thought looked like Daniel's.

At some point during the day of July 5, Herbert saw Charles and Scoggins at the mobile home. In the evening, Herbert observed Charles and Scoggins leaving in Daniel's vehicle.

That evening, around 7:30 p.m. or 8:00 p.m., another neighbor, Jeff Ingle, saw Daniel and Charles arrive at Herbert's mobile home.

4

Ingle testified that he did not see Scoggins with Charles, but acknowledged, "I wouldn't know [Scoggins] if I saw him." Shortly thereafter, the neighbor saw Charles throw a firecracker and then leave. The sound of fireworks could be heard across the neighborhood throughout the evening.

At some point after Charles left, Herbert noticed that the door to Charles's bedroom was open, and he saw Daniel lying on a bunch of clothes on the bed in Charles's bedroom and asked if she was alright. Daniel did not respond, and Herbert "figured she had just went to sleep" and proceeded to watch television downstairs.

Between 9:21 p.m. and 11:00 p.m. on July 5, the mother of Scoggins's child, Alisha Nelson, who was incarcerated at the time, called Scoggins multiple times. She testified that she understood Charles to be with Scoggins during those calls.[4] On a call that began at 9:21 p.m., Nelson overheard Scoggins telling Charles, "[D]on't

---

[4] Those calls were recorded and formally admitted at trial, but the jury never heard the recordings. The quotations from those calls are from Nelson's words in her testimony, or the language of examining counsel with which she agreed.

shoot yourself in the toe," and, "[I]t's loaded." On a call that began at 9:37 p.m., Nelson heard Scoggins praise the Nissan Xterra in which he and Charles were traveling. On a call that began at 10:32 p.m., Nelson heard Scoggins say that he and Charles were "going down the road," Scoggins adding, "I'm fixing to hang out the 'f'ing window and 'f'ing blow somebody's tires out." Nelson testified that it sounded like Scoggins and Charles were having a good time.

At some point, Charles and Scoggins returned to the mobile home, and Herbert told them to check on Daniel. Charles and Scoggins did not say anything, but simply went into Charles's bedroom before leaving again. Herbert later that night discovered that Daniel was still lying in Charles's bedroom, bleeding and unresponsive. He called 911 just after midnight.

Officers responded and found Daniel dead in the bedroom with a bullet wound in her chest and an abrasion, consistent with a graze from a bullet, on her arm. Officers also found a bullet hole in one of Charles's bedroom windows, with indications that the bullet creating that hole (which was never recovered) had been fired from

6

inside the room. Writing on the wall of the bedroom said, among other things, "Kill fake friends" and "Fred Jason Charles." A coroner who pronounced Daniel dead at the mobile home estimated that when he encountered her at about 4:50 a.m. on July 6, she had been dead for about four to six hours, meaning that Daniel likely died sometime between 10:50 p.m. and 12:50 a.m.

Charles, accompanied by Scoggins, was seen on video putting gas into the victim's vehicle at a gas station around 12:20 a.m. on July 6.

Marcus Gunnin was camping in the Strawberry Mountain area of Walker County on July 6 when he saw two "30ish, white males" walking along an unpaved road toward Manning Mill Road around 3:00 a.m.[5] About 45 minutes later, Gunnin heard the sounds of a car cranking up and doors slamming, coming from the direction the men had been heading.

---

[5] Scoggins is white. An exact date of birth for him is not apparent from the record, and it does not appear that the jury was told his age. But a search of the Georgia Department of Corrections web site indicates he was approximately 30 years old at the time of the murder, and the jury was able to observe his appearance at the trial that took place the following year.

In the early hours of July 6, Scoggins called his sister, Crystal Scoggins ("Crystal"). At 1:58 a.m., Crystal reached out to a friend for a ride. They proceeded to pick up Scoggins and Charles on an unpaved road that intersected Manning Mill Road in the Strawberry Mountain area, sometime between 2:00 a.m. and 4:00 a.m. Crystal described Scoggins as "happy and giddy," laughing at a joke during a stop for gas; her friend said Charles and Scoggins were "cutting up and acting goofy" in the car. After picking up Charles and Scoggins, Crystal drove the men back to the house where she and Scoggins lived with their parents. While there, Charles made a noose with a belt, held the noose in Crystal's presence, and "dared [her] to say a word." Scoggins proceeded to sleep on the couch, while Crystal and Charles stayed up all night.

On July 6, officers found Daniel's vehicle, burned down to the metal frame at the end of the unpaved forestry road that intersects Manning Mill Road.

At trial, a firearms examiner testified that a bullet recovered from Daniel's body was likely fired from one of several different

8

models of handguns. Although Herbert owned a handgun, the firearms examiner ruled out Herbert's handgun as the source of the bullet that killed Daniel. And Herbert's hands, swabbed by law enforcement at approximately 4:27 a.m. on July 6, 2015, tested negative for gunshot residue.

The State also introduced certified copies of Scoggins's July 2013 felony drug convictions.

(a) Scoggins argues that the evidence was insufficient to sustain his malice murder conviction because, although he was present at the time of the murder, there was no evidence supporting a conclusion that he was even a party to that crime. We disagree.

A jury may find a defendant guilty beyond a reasonable doubt if the evidence shows either that he directly committed the crime or that he was a "party thereto." OCGA § 16-2-20 (a). A person is a party to the crime if he aids or abets in its commission or if he "advises, encourages, hires, counsels, or procures another" to commit it. OCGA § 16-2-20 (b) (3), (4); see also *Willis v. State*, 315 Ga. 19, 24 (2) (880 SE2d 158) (2022). "And although the defendant's

9

mere presence at the scene is not enough to convict him as a party to the crime, the jury may infer his criminal intent from his presence, companionship, and conduct before, during, and after the offense." *Willis*, 315 Ga. at 24 (2) (citation and punctuation omitted). The required criminal intent for liability under a party-to-a-crime theory is the same as that of the underlying crime. See *Downey v. State*, 298 Ga. 568, 570 (1) & n.3 (783 SE2d 622) (2016). For a malice murder conviction, the requisite criminal intent is that of malice, which incorporates the intent to kill. See *Benton v. State*, 305 Ga. 242, 244 (1) (a) (824 SE2d 322) (2019); OCGA § 16-5-1 (a). "The malice necessary to establish malice murder may be formed in an instant, as long as it is present at the time of the killing." *Benton*, 305 Ga. at 244 (1) (a). Whether a killing was intentional and malicious is for the jury to determine. See id. Here, there was sufficient evidence from which the jury could find that Scoggins was guilty of the malice murder of Daniel, at least as a party to the crime.

The State does not appear to argue on appeal that there was evidence from which the jury could infer that Scoggins himself shot

10

Daniel. But Scoggins admitted in both his brief and oral argument that he was present when Daniel was shot.[6] And the evidence was consistent with that concession. Multiple witnesses said that Scoggins and Charles were together for most of the day on July 5. They were the last two persons seen with the victim before Herbert found her body and alerted authorities. Herbert was ruled out as a perpetrator by law enforcement through a gunshot residue test. Although Ingle testified that Charles and Daniel arrived at the mobile home without Scoggins around 7:30 p.m or 8:00 p.m., Ingle also testified that he did not know Scoggins, such that the jury could have concluded that his failure to recall Scoggins's presence was due to either Ingle's lack of memory or Scoggins entering the home at a slightly different time than Charles and Daniel. Charles was seen setting off a firework before leaving around that time, which the jury

---

[6] We note that generally we no longer review sua sponte the sufficiency of the evidence, except that of murder convictions resulting in the death penalty. See *Davenport v. State*, 309 Ga. 385, 398-399 (4) (b) (846 SE2d 83) (2020). Thus, instead of considering all conceivable sufficiency-related issues, we limit our consideration to only the argument that Scoggins actually makes in challenging the sufficiency of the evidence as to his malice murder conviction — in essence, that his *mere presence* for the shooting of Daniel, even coupled with flight, was insufficient.

could have inferred was done in order to give cover to the sound of a gunshot, and Herbert found Daniel unresponsive after seeing Charles leave. And even if Daniel was not shot until after Charles and Scoggins returned to the mobile home later, the two men were seen going into Charles's bedroom together at that time.

Even if the evidence did not conclusively establish which of the two defendants shot Daniel, "there was evidence of a common criminal intent, including [Scoggins's] presence, companionship, and conduct before and immediately after the fatal shooting." *State v. Cash*, 302 Ga. 587, 596 (807 SE2d 405) (2017). "[I]f a defendant has knowledge of the crime which is intended and shares in the criminal intent of the principal actor, that defendant is an aider and abettor." Id. "Consequently, if such defendant is at the scene and does not oppose the commission of the crime, the trier of fact may consider such conduct in connection with prior knowledge and is authorized to conclude that the defendant assented and lent approval to the commission of the crime, and thus, was aiding and abetting it." Id. at 596.

Here, despite being admittedly present when Daniel was shot, Scoggins made no attempt to seek medical aid for her. Indeed, after Herbert found Daniel unresponsive, he told Scoggins and Charles to check on her; according to Herbert's testimony, Scoggins and Charles "didn't say nothing" when they went to check on Daniel, and Herbert did not see Charles again that night. Instead of summoning aid, Scoggins left the scene with Charles in Daniel's vehicle, giving rise to an inference that Scoggins shared Charles's criminal intent. See *Jenkins v. State*, 313 Ga. 81, 88-89 (3) (868 SE2d 205) (2022) (flight from scene of crime generally is circumstantial evidence of guilt); *Powell v. State*, 291 Ga. 743, 744-745 (1) (733 SE2d 294) (2012) (concluding evidence sufficient to sustain murder conviction of defendant on party to a crime theory, in part based on his presence at the shooting, his failure to summon help for the victim, his fleeing with the other possible perpetrator of the shooting, and his continued association afterward).

It appears that Scoggins may have claimed at trial that he did

not share Charles's criminal intent but instead acted under duress.[7]

The evidence belies any such claim. After Scoggins and Charles disposed of Daniel's vehicle,[8] Scoggins obtained a ride for himself and Charles, stayed overnight with Charles, and continued to laugh and joke around Charles even in the hours after the shooting — all of which undercut Scoggins's apparent claim that he was acting under duress. Consequently, the evidence was sufficient to enable a rational trier of fact to find Scoggins guilty beyond a reasonable

---

[7] Scoggins did not testify at trial, and the State did not introduce at trial any statement by him to law enforcement. Closing arguments were not transcribed. But trial counsel testified at the motion for new trial hearing that her theory of the case was that Scoggins was "innocent" of Daniel's murder and subsequently acted "in fear for his own life." The trial court declined to give Scoggins's requested instruction on coercion.

[8] The State seeks to rely on the burning of Daniel's vehicle in arguing that the evidence is sufficient to support the convictions challenged on sufficiency grounds. But, in responding to Scoggins's ineffective assistance of counsel claim about jury instructions, the State insisted before the trial court and this Court that there is no evidence that Daniel's vehicle was burned for the purpose of destroying evidence of the murder. The State at oral argument before this Court acknowledged the inconsistency in these two positions. We recognize the possibility that the jury might have inferred that Scoggins participated in the burning of the victim's vehicle in an attempt to disassociate himself from the car, rather than keeping it, because he had been involved in her killing. But we place virtually no weight on this in our sufficiency analysis, because it is not necessary to consider this evidence — and thus it is not necessary to resolve the contradiction in the State's arguments — in order to find that the evidence was sufficient.

doubt of the crime of malice murder. See *Shockley v. State*, 297 Ga. 661, 663-665 (1) (777 SE2d 245) (2015) (concluding evidence was sufficient to support murder conviction where defendant was present for the shooting, fled the scene with co-indictee, and later fled the jurisdiction).

(b) Scoggins also argues that the evidence was insufficient to sustain his convictions for possession of a firearm during the commission of a felony and possession of a firearm by a convicted felon. We disagree.

Scoggins does not make any particular argument as to the firearm offenses, relying on his general argument that mere presence, even coupled with flight, is insufficient to make one a party to a crime. Regarding Scoggins's conviction for possession of a firearm during the commission of a felony, of course whoever shot Daniel possessed a firearm during the shooting. And even if Charles was the shooter, a defendant may be convicted of possession of a firearm during the commission of a felony under a party-to-a-crime theory. See *Dublin v. State*, 302 Ga. 60, 65-66 (3) (805 SE2d 27)

15

(2017); *Johnson v. State*, 276 Ga. 368, 371 (1) (578 SE2d 885) (2003). Given our conclusion that there was sufficient evidence to sustain Scoggins's murder conviction under the theory that he was a party to the murder of Daniel, the evidence was sufficient to support Scoggins's conviction for possession of a firearm during the commission of a felony under that theory, as well.

As for Scoggins's felon-in-possession conviction, a defendant may be convicted of that offense under a party-to-a-crime theory, where the defendant is a party to possession of a firearm by *someone else* who is a convicted felon. In that scenario, a defendant need not even constructively possess a firearm in order to be guilty of the crime. See *Lebis v. State*, 302 Ga. 750, 757-759 (II) (B) (808 SE2d 724) (2017) (concluding that evidence was sufficient for jury to conclude that defendant was guilty of felony murder as a party to her husband's possession of a firearm as a convicted felon). But here the felon-in-possession counts against Scoggins clearly alleged that *he*, not Charles, had previously been convicted of a felony. Indeed, the State clarified at oral argument that these counts were

predicated on the theory that Scoggins himself constructively possessed a firearm.

"[I]f a person has both the power and the intention at a given time to exercise dominion or control over a thing, then the person is in constructive possession of that thing." *Lebis*, 302 Ga. at 753 (II) (citation and punctuation omitted). "Mere proximity to contraband, absent other evidence connecting a suspect with that contraband, is not enough to establish constructive possession." Id. at 754 (II). Whether the evidence shows more than mere proximity, and whether circumstantial evidence of possession has excluded every reasonable hypothesis save that of constructive possession, "are questions committed principally to the trier of fact, and we should not disturb the decisions of the trier of fact about these things unless they cannot be supported as a matter of law." Id. (citation and punctuation omitted).

Given the jury's role in that regard, we conclude that there was sufficient evidence that Scoggins constructively possessed a firearm. There was evidence that Scoggins and Charles rode around together

17

in a vehicle on the day of the shooting, with Charles displaying a firearm at various points that day. Although there was little evidence about how that firearm was carried while the two were driving around (i.e., whether the gun was in a place where Scoggins could freely reach it, as opposed to being kept on Charles's person), the jury heard evidence that, while riding around with Charles, Scoggins told his girlfriend that *he* was "fixing to . . . blow somebody's tires out." From this evidence, the jury could infer that Scoggins either actually possessed a gun at that time, or that he had "both the power and the intention" to exercise control over a gun at that time, such that he had constructive possession of that firearm. Under these particular circumstances, we conclude that the evidence was sufficient to find that Scoggins possessed a gun while a convicted felon.

2.    Scoggins also argues that trial counsel was ineffective in that she failed to request "a charge of" concealing the death of another or hindering the apprehension of a felon. We disagree.

To prove his claim of ineffective assistance of counsel, Scoggins

18

must show that counsel's performance was deficient and that counsel's deficient performance prejudiced Scoggins's defense. See *Strickland v. Washington*, 466 U.S. 668, 687 (104 SCt 2052, 80 LE2d 674) (1984). "To show that his lawyer's performance was deficient, the defendant must demonstrate that the lawyer performed his duties in an objectively unreasonable way, considering all the circumstances and in the light of prevailing professional norms." *State v. Spratlin*, 305 Ga. 585, 591 (2) (826 SE2d 36) (2019) (citation and punctuation omitted). "In reviewing a ruling on a claim of ineffective assistance of counsel, we defer to the trial court's findings of fact unless they are clearly erroneous, but we apply the law to the facts de novo." See id.

Scoggins argues that trial counsel should have "request[ed] a charge of" concealing the death of another or hindering the apprehension of a felon because had the jury been given "the opportunity to hold [Scoggins] accountable for his actions" by finding him guilty of those crimes, "it is highly likely that he would be convicted of" those offenses. "A written request to charge a lesser

included offense must always be given if there is any evidence that the defendant is guilty of the lesser included offense." *Soto v. State*, 303 Ga. 517, 520 (2) (813 SE2d 343) (2018) (citation and punctuation omitted). But "[i]t is error to charge the jury on an offense not embraced in the indictment." *Nalls v. State*, 304 Ga. 168, 181-182 (3) (c) (815 SE2d 38) (2018); see also *State v. Hightower*, 252 Ga. 220, 222-223 & n.2 (312 SE2d 610) (1984) ("[W]here the defendant is charged by a narrowly drawn indictment with a specific crime it is not within the power of the judge or the jury to interpret the facts as presented at trial to support an alternative, separate offense. Criminal indictments are not deemed amendable to conform to the evidence.").

As Scoggins conceded at oral argument, neither concealing the death of another nor hindering the apprehension of a felon is included within any of the offenses with which Scoggins actually was charged. A conviction for concealing the death of another requires proof that the defendant "by concealing the death of any other person, hinders a discovery of whether or not such person was

20

unlawfully killed[.]" OCGA § 16-10-31. And a conviction for hindering the apprehension of a felon requires proof that the defendant "with intention to hinder the apprehension or punishment of a person whom he knows or has reasonable grounds to believe has committed a felony" either "[h]arbors or conceals such person" or "[c]onceals or destroys evidence of the crime." OCGA § 16-10-50. None of these elements are elements of the crimes with which Scoggins was charged, and thus neither hindering nor concealing is a lesser offense included within any of the charged offenses. See OCGA § 16-1-6 (defining included crimes); see also *Nalls*, 304 Ga. at 176 (3) (a) (hindering the apprehension of a criminal is not included within the crime of murder); *Chapman v. State*, 280 Ga. 560, 561 (4) (629 SE2d 220) (2006) (concealing the death of another is not a lesser offense of felony murder predicated on aggravated assault). Therefore, counsel was not deficient for failing to request instructions on either offense. See *Jeffrey v. State*, 296 Ga. 713, 716 (2) (770 SE2d 585) (2015) ("[T]rial counsel's failure to request an inapposite instruction cannot form the basis for an ineffectiveness

21

claim.").

*Judgment affirmed. All the Justices concur.*