S12A1442. PLATT v. THE STATE.
(732 SE2d 75)

BENHAM, Justice.

Appellant Zyderrious Platt was convicted of malice murder, felony murder, feticide, aggravated assault, and possession of a firearm for the October 3, 2009, shooting death of his pregnant wife Jelani Platt.[1] Appellant contends that the evidence was insufficient to authorize the jury to find him guilty, beyond a reasonable doubt, of the crimes for which he was convicted. For reasons stated below, we affirm appellant's convictions.

---

[1] On October 4, 2010, appellant was indicted by a Muscogee County grand jury on charges of malice murder, two counts of felony murder, feticide, aggravated assault, possession of a firearm during the commission of a crime, and possession of a firearm by a convicted felon. The indictment also sought recidivist treatment based on three prior felonies. The State later redacted the indictment, excising one of the felony murder counts and the underlying felony count of possession of a firearm by a convicted felon. The trial was held before a jury on January 24 through January 27, 2011, with the jury returning a verdict of guilty on all charges. The trial court sentenced appellant to two consecutive life sentences for murder and feticide and five years to serve consecutively for possession of a firearm during the commission of a crime. The aggravated assault count merged into the count of murder and the felony murder count was vacated as a matter of law. Appellant timely filed a notice of appeal on February 4, 2012. The case was docketed to the September 2012 term of this Court for a decision to be made on the briefs.

The evidence construed in favor of the jury's verdict showed that on October 3, 2009, the victim's mother became concerned when the victim failed to pick up the victim's nephew that morning to take him to his football game, failed to appear at the nephew's football game, and failed to return her mother's texts and voice messages. The victim's mother went to the victim's apartment and spoke with appellant. Appellant told the victim's mother that the couple had an argument over rent money the night before, that he left the apartment, and, when he returned, the victim was not at home. The mother briefly looked around the couple's apartment, but did not see anything unusual. The victim's mother then went to the home of the victim's friend who advised that she had dinner with the victim the night before and drove her back to the Platts' apartment around midnight. The victim's mother then called the police to report the victim as missing. Responding to the mother's report, a patrol officer arrived at the victim's apartment and spoke to appellant and the victim's mother. Appellant repeated to the officer the same story he gave to the victim's mother. Later that afternoon, a police officer observed appellant place a trash bag into the dumpster. The officer retrieved the trash bag and found a 9mm handgun wrapped in a towel. The police then arrested and jailed appellant for possessing a weapon as a convicted felon. The police subsequently executed a search warrant of the Platts' apartment where they discovered the victim's car keys, identification, and wallet in a dresser drawer under some clothes.

Days later, appellant, who was still in jail on the weapon's charge, asked to speak with police. After being read his *Miranda*[2] rights, appellant led police to the victim's body which was partly submerged in a retention pond. The victim's body was wrapped in a blanket with a boulder placed between her legs. The victim had a gunshot wound to the head. While at the retention pond, the police also recovered a live 9mm round of ammunition.

Back at the station, the police again read appellant his *Miranda* rights, and appellant gave an audio-recorded statement that was reduced to writing. In his statement, appellant said that he and the victim had an argument about the rent and that he put his hands around the victim's neck during the argument. Appellant stated that when he left the apartment just after the argument, the victim was standing at the top of the stairs, holding her neck and gasping for air. When he returned to the apartment, appellant said he saw the victim lying at the bottom of the stairs and that he could not revive her.

---

[2] *Miranda v. Arizona*, 384 U. S. 436 (86 SC 1602, 16 LE2d 694) (1966).

Believing the victim to be dead, appellant placed the victim into the back of his truck and drove to the retention pond. While trying to move the body from the truck, straddling the body, and holding a gun in his hand, appellant stated that the gun went off and, as a result, he shot the victim. After shooting the victim, appellant wrapped the victim in a blanket with a boulder, placed her in the pond, and left the scene. At trial, the prosecutor played the audiotape of appellant's statement for the jury.

In addition, the prosecution proffered testimony concerning prior difficulties between appellant and the victim, including the testimony by the victim's best friend that appellant had threatened to kill the victim if she ever left him. The prosecution also proffered physical evidence. The firearms expert testified that the bullet found at the crime scene had been cycled through the gun retrieved from appellant's dumpster. The firearms expert further testified that, upon applying different tests, the gun would sometimes jam, but would not discharge accidentally. The medical examiner testified that the victim had no significant trauma to her body other than the gunshot wound to her head, that the victim had hemorrhaging indicating she was alive when she was shot, and that the gunshot to the head was the cause of death. The medical examiner corroborated other witness testimony when he confirmed that the victim was ten weeks pregnant when she was killed.

Appellant contends the above evidence was insufficient because there was no showing he intended to kill his wife and unborn child. We disagree. This Court has stated:

> [A] malice murder can be shown not only by evidence that the defendant acted with the deliberate intention unlawfully to take the life of another human being which is manifested by external circumstances capable of proof, but also by evidence that the defendant acted where no considerable provocation appears and where all the circumstances of the killing show an abandoned and malignant heart. In other words, evidence that the defendant acted with implied malice is, for purposes of demonstrating his guilt of the crime of malice murder, no less probative than proof that he acted with a specific intent to kill. Moreover, the malice which is required for murder can be formed in an instant so long as it is present at the time of the act of killing.

*Jackson v. State*, 282 Ga. 668, 671 (653 SE2d 28) (2007). In this case, there was evidence of implied malice. Appellant, who had threatened to kill the victim in the past, took the victim to a retention pond, shot

her, wrapped her body with a large boulder, placed her in the pond, and then, for days, misled the victim's mother and the authorities about the victim's whereabouts. The evidence was sufficient to authorize a rational trier of fact to find appellant guilty beyond a reasonable doubt of the crimes for which he was convicted. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

*Judgment affirmed. All the Justices concur.*

DECIDED OCTOBER 1, 2012.

*Robert L. Wadkins, Stephen A. Craft, Victoria L. Novak*, for appellant.

*Julia Fessenden Slater, District Attorney, Michael E. Craig, Assistant District Attorney, Samuel S. Olens, Attorney General, Paula K. Smith, Senior Assistant Attorney General, Brittany N. Jones, Assistant Attorney General*, for appellee.