302 Ga. 162
FINAL COPY

S17A0967.  MORAN v. THE STATE.

BENHAM, Justice.

Appellant Misty Sunshine Moran appeals her convictions for crimes related to the death of Isaias Tovar-Murillo.[1]  For the reasons set forth below, we affirm.

1.  (a) Viewed in a light most favorable to upholding the jury's verdicts, the record shows appellant and her friends conspired to rob a taxi driver.  Appellant called for a taxi to pick her up, while her friends followed the taxi in a Honda which was to serve as the "getaway" vehicle.  The taxi was driven by Isaias Tovar-Murillo.  During the ride, appellant pulled a gun

[1] The crimes occurred on March 15, 2015.  On March 26, 2015, a Hall County grand jury indicted appellant on charges of malice murder, felony murder (attempt to rob), felony murder (aggravated assault), criminal attempt to commit armed robbery, conspiracy to commit a crime, aggravated assault (with a deadly weapon), aggravated assault (with intent to rob), aggravated assault (with intent to murder), four counts of possession of a firearm during the commission of a crime, possession of a firearm by a convicted felon, and two counts of participation in criminal street gang activity.  Appellant was tried before a jury from October 6 to October 8, 2015, with the jury returning verdicts of guilty on all counts, except for possession of a firearm by a convicted felon, which count was nolle prossed.  On October 8, 2015, the trial court sentenced appellant to life without parole for malice murder plus a number of years to serve for counts that were not vacated as a matter of law or merged for sentencing purposes.  Appellant moved for a new trial on October 12, 2015, and amended that motion on March 15, 2016.  On April 12, 2016, the trial court held a hearing on the motion for new trial as amended and denied the motion on April 13, 2016.  Appellant timely filed a notice of appeal and, upon receipt of the record, the case was docketed to the April 2017 term of this Court and submitted for a decision to be made on the briefs.

on the victim and demanded money. When the victim begged for his life and then attempted to exit the vehicle, appellant shot him in the back of the head. Although shot, the victim's foot remained on the gas pedal and the vehicle continued to move, eventually crashing into a tree in a wooded area off the road. Appellant exited the vehicle before it crashed. When appellant met up with her friends again, she tried to get them to collect any money inside the taxi, but they refused to do so upon seeing the carnage at the crash site. The group then decided to burglarize a home. Later that night, appellant and one of her compatriots hid the gun under a cement slab in appellant's driveway; however, appellant eventually returned the gun, which was a 9 millimeter gun, to the person from whom she had borrowed it.

The day after the shooting, appellant confessed to a friend that she had killed the victim and shared details of the killing, including details that the victim had begged for his life, was crying, and tried to escape when appellant shot him. Appellant's friend contacted authorities. Although appellant initially denied any involvement in the murder, she eventually admitted to police that she was in the victim's taxi with a gun, but she claimed the gun discharged by accident while cradled under her arm. One of appellant's compatriots testified that appellant told them she shot the victim because he

2

tried to grab the gun. The firearms examiner testified the gun used in the shooting was in good working order and determined it could not be discharged without someone pulling its trigger.[2] The firearms examiner also confirmed that the 9mm shell casing recovered from the taxi's back seat was fired from the gun appellant had possessed. The medical examiner testified that the victim died from a single gunshot to the back of the head and that stippling at the entrance wound indicated the gun was fired within a foot of the victim's head.

(b) Appellant contends the evidence was insufficient to convict her for malice murder and insufficient to prove that she was guilty of aggravated assault (intent to kill) because there was no evidence that she intended to kill the victim. We disagree.

> [I]n Georgia, the crime of malice murder is committed when the evidence shows either an express or, in the alternative, an implied intent to commit an unlawful homicide. This meaning of malice murder is consistent with the general rule that crimes which are defined so as to require that the defendant intentionally cause a forbidden bad result are usually interpreted to cover one who knows that his conduct is substantially certain to cause the result, whether or not he desires the result to occur. Thus, a malice murder can be shown not only by evidence that the defendant acted with the deliberate intention unlawfully to take the life of another human being which is manifested by external

---

[2] More specifically, the firearms examiner testified that over six pounds of force was required to be applied to the gun's trigger in order for it to fire.

circumstances capable of proof, but also by evidence that the defendant acted where no considerable provocation appears and where all the circumstances of the killing show an abandoned and malignant heart. In other words, evidence that the defendant acted with implied malice is, for purposes of demonstrating [her] guilt of the crime of malice murder, no less probative than proof that [s]he acted with a specific intent to kill.

(Citations and punctuation omitted.) Parker v. State, 270 Ga. 256 (4) (507 SE2d 744) (1998). See also OCGA § 16-5-1 (b). The malice necessary to establish malice murder may be formed in an instant, as long as it is present at the time of the killing. See Platt v. State, 291 Ga. 631, 633 (732 SE2d 75) (2012). Here, there was evidence of malice. Appellant made admissions that she shot the victim as he tried to escape and while he was begging for his life. The evidence also showed appellant shot the victim in the back of the head at a range close enough to cause stippling to the wound. The evidence was sufficient to authorize a rational trier of fact to find appellant guilty beyond a reasonable doubt of malice murder, as well as the other crimes for which she was convicted.[3] Id. at 634; Jackson v. Virginia, 443 U. S. 307 (99 SCt 2781, 61 LE2d 560) (1979).

2. At trial, the trial court admitted into evidence photographs of text messages on appellant's cell phone. A law enforcement officer testified she

---

[3] We note that appellant was not convicted of aggravated assault (intent to murder) because that charge merged into the malice murder count for sentencing purposes.

4

obtained the cell phone from appellant's probation officer and took pictures of the text messages. After the officer testified, the State moved to admit the photographs and the following colloquy transpired:

> THE COURT: Any objection?
> [DEFENSE COUNSEL]: I don't have any objection based on the foundation for the photograph[s]. But I would reserve perhaps as it relates to how — whether or not they legally came into possession of her cell phone.

The trial court admitted the photographs without any further discussion. Pretermitting whether defense counsel's comment constituted a valid objection, appellant has failed to show her cell phone was obtained unlawfully.

As an initial matter, the record is silent as to how appellant's probation officer came to be in possession of appellant's cell phone and appellant made no proffer that his possession of the cell phone was unlawful. Furthermore, the record shows that at the time the crimes occurred and during the investigation, appellant was on probation for a 2006 offense. As a condition of her probated sentence, appellant had executed a Fourth Amendment waiver whereby she agreed to be subject to warrantless searches during the term of her probation. The United States Supreme Court has held that probationers do not enjoy the "absolute" liberty afforded to other citizens.

5

United States v. Knights, 534 U. S. 112, 119 (122 SCt 587, 151 LE2d 497) (2001).  As such, a probationer may be subject to a warrantless search if there is reasonable suspicion of criminal activity.  Id. at 121.  "The degree of individualized suspicion required of a search is a determination of when there is a sufficiently high probability that criminal conduct is occurring to make the intrusion on the individual's privacy interest reasonable."  Id.  Here, at the time authorities were examining appellant's cell phone, there was reasonable suspicion that appellant was involved in a murder.  Under the circumstances, we cannot say the trial court erred when it admitted the photographs at issue.

Judgment affirmed.  All the Justices concur.

Decided October 2, 2017.

Murder. Hall Superior Court. Before Judge Deal.

Debra K. Jefferson, for appellant.

Lee Darragh, District Attorney, Shiv Sachdeva, Laura K. Lukert, Assistant District Attorneys; Christopher M. Carr, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Matthew B. Crowder, Assistant Attorney General, for appellee.