312 Ga. 797
FINAL COPY

S21A1152.  GARCIA-MARTINEZ v. THE STATE.

BOGGS, Presiding Justice.

Miguel Angel Garcia-Martinez was convicted of malice murder, four counts of aggravated assault, and four counts of possession of a firearm during the commission of a felony in connection with the 2018 shooting death of his friend and former roommate, Daniel Antonio-Lopez, and the aggravated assaults of Antonio-Lopez, Juan Carlos Mondragon, Saul Roman-Pintado, and Francisco Lopez.[1]

---

[1] The murder occurred on January 6, 2018. On April 6, 2018, a Newton County grand jury indicted Garcia-Martinez for malice murder, felony murder, four counts of aggravated assault, and four counts of possession of a firearm during the commission of a felony. Garcia-Martinez was tried before a jury from January 13 to 17, 2020, and was found guilty on all counts. On February 4, 2020, Garcia-Martinez was sentenced to serve life in prison for murder; 20 years in prison consecutive to the life sentence for the first aggravated assault count; 20 years on each of the remaining aggravated assault counts concurrent with the first aggravated assault count; and consecutive five-year terms for each of the four firearm possession counts. On February 28, 2020, Garcia-Martinez's trial counsel filed a timely motion for new trial, which she amended on July 17, 2020. The parties waived a hearing on the motion, which was denied on February 25, 2021. Garcia-Martinez's notice of appeal was filed on March 17, 2021, and the case was docketed to this Court for the August 2021 term and submitted for a decision on the briefs.

The trial court denied Garcia-Martinez's motion for new trial, and he appeals, asserting as his sole enumeration of error the sufficiency of the evidence to support his convictions. Finding the evidence sufficient, we affirm.

Construed in the light most favorable to the jury's verdicts, the evidence showed that Garcia-Martinez and the victim, Antonio-Lopez, were friends, but they were having a disagreement about money. Garcia-Martinez said that Antonio-Lopez owed him money, but Antonio-Lopez said he had already paid Garcia-Martinez. A witness testified that Garcia-Martinez had threatened on multiple occasions to kill Antonio-Lopez if Antonio-Lopez did not pay him back.

On January 6, 2018, Francisco Lopez drove Garcia-Martinez to the home of their friend Mondragon, a mechanic, to inquire about car repairs. Mondragon was aware that Antonio-Lopez would be coming to pick up a paycheck, and he cautioned Garcia-Martinez that he did not want any trouble. Garcia-Martinez responded, "[T]hat's fine. You won't have problems here."

All three men testified that when Antonio-Lopez and Roman-Pintado arrived, Garcia-Martinez immediately began arguing with Antonio-Lopez about the money, and Antonio-Lopez pushed him. Mondragon separated them and told them to calm down, but they began arguing again. Garcia-Martinez had a loaded pistol on his hip, which he kept reaching for, and Antonio-Lopez told Garcia-Martinez not to draw it. Garcia-Martinez threw a drink on Antonio-Lopez, and Antonio-Lopez responded by pushing him. Then, Garcia-Martinez drew the pistol, shot at Antonio-Lopez, and missed. At that point, Mondragon intervened to try to stop the fight and get the gun from Garcia-Martinez. Antonio-Lopez also tried to take the gun away. They were unsuccessful, and during the struggle Garcia-Martinez fired the pistol again, this time striking Antonio-Lopez, who fell to the ground. Mondragon and Garcia-Martinez also fell, and Garcia-Martinez shot at Antonio-Lopez from the ground, striking him again. Then, Garcia-Martinez got up, walked over to where Antonio-Lopez was lying, stood over him, cursed at him, and shot him a final time in the head. All three witnesses testified that Antonio-Lopez

did not have a gun or a knife, that no one on the scene was armed but Garcia-Martinez, and that Antonio-Lopez was not the aggressor in the conflict.

After Garcia-Martinez shot Antonio-Lopez for the final time, he walked over to Mondragon, pointed the pistol at him, and threatened him. Garcia-Martinez then demanded that someone give him car keys as he pointed the gun at Mondragon, Francisco Lopez, and Roman-Pintado. Mondragon's wife heard the shots and saw Antonio-Lopez and Mondragon lying on the ground, while Garcia-Martinez stood there with a black gun in his hand. She shouted that she was calling the police, and told her mother to call the police. Garcia-Martinez ran into the woods behind the house. When a sheriff's deputy responded to the scene, he observed Antonio-Lopez lying on the ground in a pool of blood, not moving, with a bullet wound in his forehead. Paramedics shortly thereafter pronounced Antonio-Lopez dead. Sheriff's deputies and a criminal investigator recovered three .45 ACP shell casings and one spent .45-caliber round at the scene.

Garcia-Martinez called a friend, Abraham Marques, and asked Marques for a ride. Several motorists notified the police after they saw Garcia-Martinez, with mud on his clothes, running across an open field near the scene of the shooting and getting into Marques' car. City of Covington police officers stopped the car several miles from the crime scene, and Newton County sheriff's deputies arrived and took Marques and Garcia-Martinez into custody. A deputy found a live .45 ACP round in Garcia-Martinez's pocket and a loaded and cocked .45 ACP pistol on the floor behind the front passenger seat, next to a separate, loaded magazine.

After Garcia-Martinez was arrested, he was read his *Miranda* rights[2] through an interpreter because he did not speak English. Garcia-Martinez then agreed to speak with an investigator, also through an interpreter. He stated that he shot Antonio-Lopez, that Antonio-Lopez never struck him, and that Antonio-Lopez was unarmed. Garcia-Martinez said that he pulled out the gun because

---

[2] See *Miranda v. Arizona,* 384 U. S. 436 (86 SCt 1602, 16 LE2d 694) (1966).

he "just wanted to scare" Antonio-Lopez, that the gun "discharged itself" when the men fell and the others landed on him, and that it "shoots and works by itself."

At trial, a GBI firearms examiner confirmed that the fatal bullets were fired from the pistol found in Marques' car. The examiner also testified that the pistol was in proper working order, the safeties were functioning properly, and the pistol did not display any defect that would cause a discharge without pulling the trigger. The examiner further testified that the pistol was equipped with a "grip safety," which prevents the firearm from discharging unless it is held firmly in the hand.

The medical examiner testified that, of a total of five gunshot wounds inflicted on Antonio-Lopez, either of two — the head wound or a spinal-column wound — alone would have been fatal, but he could not testify to the order in which they were inflicted. The medical examiner further testified that the head wound showed a large amount of "stippling" — penetration of the skin by burned and unburned gunpowder — indicating that the wound was inflicted at

relatively close range, between six inches and two feet.

Garcia-Martinez testified at trial as follows. Antonio-Lopez was the aggressor and approached Garcia-Martinez arguing about money. Then, Antonio-Lopez cursed him, pushed him, grabbed him by the neck, and told him, "I am going to beat the hell out of you right now." Garcia-Martinez tried to disengage, but Antonio-Lopez again grabbed him, threatened him, and tried to grab his gun, so Garcia-Martinez pulled the pistol out to try to scare Antonio-Lopez. Antonio-Lopez and Mondragon then attacked Garcia-Martinez, the gun accidentally discharged, they all fell to the ground, and the gun discharged again. Next, Mondragon tried to grab the pistol, and "it discharge[d] because he was trying to take it." Garcia-Martinez tried to get a set of car keys from the other men because he was afraid and wanted to leave. He also testified that he approached a police officer to try to tell the officer what had happened, but the officer said he was busy and would come back later.[3] Garcia-Martinez

---

[3] A Newton County sheriff's deputy testified that as he was waiting on the main road for backup to respond to the report of a shooting, a man he

added that he was not angry with Antonio-Lopez about the money. Garcia-Martinez also acknowledged that his original statement to police was inconsistent with the physical evidence presented at trial.

Garcia-Martinez argues only that the State failed to present sufficient evidence as a matter of constitutional due process to support his convictions. He contends that the testimony of the three eyewitnesses — Mondragon, Lopez, and Roman-Pintado — was contradictory on so many points "that their credibility is severely limited," noting inconsistencies with regard to the argument leading up to the shooting, the location of the participants, the timing of the shots, and the length of time involved. He argues that Antonio-Lopez instigated the trouble by attacking him, that the other three men on the scene were Antonio-Lopez's friends, and that he was in fear for his life. He further argues that there was no evidence of malice because the gun fired accidentally. Finally, he asserts that his attempt to contact a police officer after the shooting was "not the

identified as Garcia-Martinez came out of the woods and approached his patrol car. The deputy did not have any information regarding the shooter and did not speak Spanish, so he "waved him off."

8

action of a guilty man."

While Garcia-Martinez disputes the evidence and the credibility of the witnesses, "[i]ssues of witness credibility and justification are for the jury to decide, and the jury is free to reject a defendant's claim that he acted in self-defense." (Citations and punctuation omitted.) *Butler v. State*, 309 Ga. 755, 758 (1) (848 SE2d 97) (2020). Likewise, the jury was free to reject Garcia-Martinez's claim of accident. See *Middleton v. State*, 310 Ga. 365, 369 (1) (850 SE2d 126) (2020). Garcia-Martinez argues that the State failed to prove malice. However, the jury could find malice based upon Garcia-Martinez's threats to kill Antonio-Lopez, his instigation and escalation of the quarrel, and his firing multiple shots at Antonio-Lopez, culminating in his standing over the helpless man as he lay dying on the ground, cursing him, and shooting him at close range in the forehead. See *Moran v. State*, 302 Ga. 162, 164 (1) (b) (805 SE2d 856) (2017) ("evidence that the defendant acted where no considerable provocation appears and where all the circumstances of the killing show an abandoned and malignant heart" sufficient to

establish malice (Citations and punctuation omitted.)). And "[a]lthough the eyewitness accounts of the shooting did vary to some extent, it was for the jury to determine the credibility of the witnesses and to resolve any conflicts or inconsistencies in the evidence." (Citations and punctuation omitted.) *Bighams v. State*, 296 Ga. 267, 268-269 (1) (b) (765 SE2d 917) (2014). The evidence as recited above was constitutionally sufficient to support the convictions. See *Jackson v. Virginia*, 443 U. S. 307, 319 (III) (B) (99 SCt 2781, 61 LE2d 560) (1979).

*Judgment affirmed. All the Justices concur.*

Decided November 2, 2021.

Murder. Newton Superior Court. Before Judge Foster.

*Jennifer F. Arndt*, for appellant.

*Randal M. McGinley, District Attorney, Bailey R. Simkoff, Assistant District Attorney; Christopher M. Carr, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Michael A. Oldham, Assistant Attorney General*, for appellee.