**FIFTH DIVISION**
**MCFADDEN, P. J.,**
**BROWN and MARKLE, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

**January 2, 2024**

# In the Court of Appeals of Georgia

A23A1421. MARTIN v. THE STATE.

McFADDEN, Presiding Judge.

After a jury trial, Wayne Martin was convicted of three counts of possession of a controlled substance. The trial court denied his motion for new trial, and he appeals. Martin argues that the trial court erred in denying his motion to suppress and that trial counsel was ineffective because he failed to properly prepare for and argue the motion to suppress. We hold that the trial court did not err in denying the motion to suppress and that Martin has not shown ineffective assistance of counsel. So we affirm.

1. *Evidence relevant to the motion to suppress*

The manner in which we review a ruling on a motion to suppress is as follows: First, when a motion to suppress is heard by the trial judge, that judge sits as the trier of facts. The trial judge hears the evidence, and his

findings based upon conflicting evidence are analogous to the verdict of a jury and should not be disturbed by a reviewing court if there is any evidence to support it. Second, the trial court's decision with regard to questions of fact and credibility must be accepted unless clearly erroneous. Third, the reviewing court must construe the evidence most favorably to the upholding of the trial court's findings and judgment. However, the trial court is not required to make express findings of fact after a hearing on a motion to suppress, and where the trial court has not done so, we nevertheless construe the evidence most favorably to uphold the trial court's judgment. In so construing the evidence, this [c]ourt can consider the pretrial testimony adduced at the suppression hearing, as well as the trial transcript.

*Jones v. State*, 314 Ga. 605, 609 (2) (878 SE2d 505) (2022) (citations and punctuation omitted).

So viewed, the evidence shows that the search in question was of a bedroom Martin shared with Tomalynn Johnson and was conducted by Johnson's probation officer. Johnson had entered a negotiated guilty plea to possession of methamphetamine and was sentenced to three years of probation. One of the special conditions of her probation was that she waived her rights under the Fourth Amendment and agreed to submit to searches of her "person, residence, papers, vehicle, and/or effects at any time of day or night without a search warrant whenever

requested to do so by a [p]robation [o]fficer . . . upon reasonable cause to believe that [she was] in violation of probation or otherwise acting in violation of the law. . . ." A general condition of her probation prohibited her from "chang[ing] her place of abode . . . without permission of the [p]robation [o]fficer[,]" which necessarily required her to keep her probation officer informed about where she was living. See also OCGA § 42-8-36 (a) (1) ("It shall be the duty of a probationer, as a condition of probation, to keep his or her officer informed as to his or her residence.").

Johnson's probation officer attempted to conduct a check on her residence after Johnson had updated her address to 168 North Main Street. The probation officer went to that address and was told that Johnson was staying at 170 North Main Street, where Martin and his sister lived.

The probation officer went to the 170 North Main Street address. Martin's sister answered the door and told the probation officer that Johnson was there. She had been staying there for at least two or three weeks. The sister knocked on the door of the bedroom Johnson shared with Martin, and Johnson came out. Because Johnson had tested positive for methamphetamine the week before and had given an incorrect address, the probation officer decided to conduct a search.

The probation officer told Johnson that he wanted to check the bedroom. He entered the bedroom and saw Martin getting out of the bed. The probation officer had Johnson and Martin sit in the living room to secure the area, and then searched the bedroom Johnson and Martin shared. Martin asked the probation officer for a shirt and to get him a cigarette, but he did not object to the search.

Between a night stand and the bed, the officer found a black bag that contained the drugs that formed the basis of Martin's charges. The probation officer did not know whose bag it was, but it was in the room where Johnson was staying, and it could have been hers, so he searched it.

Both Martin and Johnson were charged with crimes related to the drugs. Johnson pleaded guilty to five felony charges and one misdemeanor charge and then testified at Martin's trial. She testified that all of the drugs were Martin's.

2. *Motion to suppress*

Martin argues that the trial court erred in denying his motion to suppress because the probation officer's search violated his rights under the Fourth Amendment. We hold that the trial court did not err in denying the motion because the search was authorized by Johnson's Fourth Amendment waiver.

"[A] probationer [who has executed a Fourth Amendment waiver] may be subject to a warrantless search if there is reasonable suspicion of criminal activity[,]" *Moran v. State*, 302 Ga. 162, 165 (2) (805 SE2d 856) (2017), or "for the purpose of monitoring the extent of the [probationer's] compliance (or lack of compliance) with the terms of her probation. . . ." *Luke v. State*, 178 Ga. App. 614, 616 (2) (344 SE2d 452) (1986).

> The general rule is that the police can search a probationer, who is subject to a special condition of probation [waiving her Fourth Amendment rights and agreeing to searches of her person, property, residence, and vehicle,] at any time, day or night, and with or without a warrant, provided there exists a reasonable or good-faith suspicion for the search, that is, the police must not merely be acting in bad faith or in an arbitrary and capricious manner (such as searching to harass [the] probationer).

*Day v. State*, 367 Ga. App. 803, 806 (1) (888 SE2d 608) (2023) (citations, punctuation, and footnote omitted).

Johnson had tested positive for methamphetamine the week before and had given an incorrect address, so the probation officer had "a good-faith suspicion for the search." *Day*, 367 Ga. App. at 806 (1) (citation and punctuation omitted). We note

that Martin does not argue that the probation officer "acted in bad faith, in an arbitrary and capricious manner, or for the purpose of harass[ment]." Id. at 806 (1) n. 14. And there is no evidence in the record to support such an argument.

Although Martin argues that the probation officer exceeded the purpose of his entry into the residence — to conduct a residence check of Johnson — the officer testified that he believed he had a basis for the search in part because of Johnson's testing positive for methamphetamine. The "evidence was sufficient to support a determination by the trial judge that the search was actuated by the legitimate operation of the probation supervision process rather than by some other, more nefarious motive." *Luke*, 178 Ga. App. at 617 (2) (punctuation omitted).

The warrantless search based on Johnson's Fourth Amendment waiver was reasonable as to Martin because he did not expressly refuse consent for the search. "[A] warrantless search of a shared dwelling for evidence over *the express refusal of consent* by a physically present resident cannot be justified as reasonable as to him on the basis of consent given to the police by another resident." *Ga. v. Randolph*, 547 U. S. 103, 120 (II) (D) (126 SCt 1515, 164 LE2d 208) (2006) (emphasis supplied). But if the physically present resident does *not* expressly refuse consent, the warrantless

search based on a co-resident's consent is permissible: "if a potential defendant with self-interest in objecting is in fact at the door and objects, the co-tenant's permission does not suffice for a reasonable search, *whereas the potential objector, nearby but not invited to take part in the threshold colloquy, loses out.*" Id. at 121 (II) (E) (emphasis supplied). There is no evidence that Martin, who was present during the search, objected. And "law enforcement officers are not required to take affirmative steps to give a co-occupant/defendant an opportunity to object to their entry into the residence and search before acting on the permission already granted by a co-occupant." *State v. Lee*, 349 Ga. App. 181, 181 (825 SE2d 575) (2019). So the search based on Johnson's consent via Fourth Amendment waiver was legally authorized. See *Rockholt v. State*, 291 Ga. 85, 88 (2) (727 SE2d 492) (2012) (search was properly conducted because homeowner consented, and although defendant may have had a reasonable expectation of privacy due to the fact that he was an overnight visitor at the residence, he was physically present but failed to express any refusal of consent or any objection to search); *Brown v. State*, 288 Ga. 404, 406 (2) n. 3 (703 SE2d 624) (2010) (warrantless search authorized where homeowner gave consent to search and no evidence the defendant, even if deemed a co-tenant, expressly objected

7

to search or that defendant was removed from the residence by law enforcement for the purpose of avoiding a possible objection). See also *United States v. Watkins*, 760 F3d 1271, 1281 (II) (A) (11th Cir. 2014) (*Randolph*, supra, is interpreted narrowly to restrict the circumstances under which a co-occupant's actions rendered a search unreasonable); *United States v. Harris*, 526 F3d 1334, 1339 (I) (11th Cir. 2008) (taxi passenger who did not "actually express a refusal" to search when driver consented was not covered by *Randolph*, supra).

"Although [Martin] asserts in passing that [that the probation officer exceeded his authority when he seized Martin by having him and Johnson sit in the living room while he conducted the search], he has not applied [the relevant] law to the facts at issue, with the result that he sheds no light on [this issue]." *Gryder v. Conley*, 352 Ga. App. 891, 900 (5) (b) (836 SE2d 120) (2019). So we deem this issue abandoned. *Id*.

The trial court did not err in denying Martin's motion to suppress.

3. *Effective assistance of counsel*

Martin argues that he received ineffective assistance of counsel because his trial attorney performed deficiently in pursuing the motion to suppress. Specifically, Martin argues that trial counsel failed to file a written motion; failed to argue all

8

aspects of the search and seizure, including the state's lack of authority to search the residence; and failed to cite appropriate case law.

To prevail on his claim of ineffective assistance of counsel, Martin must show both deficient performance by trial counsel and prejudice. *Strickland v. Washington*, 466 U. S. 668, 687 (III) (104 SCt 2052, 80 LE2d 674) (1984); *Smith v. Francis*, 253 Ga. 782, 783 (1) (325 SE2d 362) (1985). Martin has the heavy burden of making this showing, *Wingate v. State*, 296 Ga. 21, 28 (3) (764 SE2d 833) (2014), and if he "fails to meet his burden of proving either prong, then we do not need to examine the other prong." *Works v. State*, 301 Ga. App. 108, 114 (7) (686 SE2d 863) (2009) (citation omitted). To show prejudice, Martin must show that but for counsel's deficiency, "there is a reasonable probability that the outcome of the proceeding would have been different." *Wingate*, 296 Ga. at 28 (3) (citation omitted). Pretermitting whether counsel's performance was deficient, Martin cannot show prejudice.

As we held in Division 2, the search did not violate the Fourth Amendment. So Martin "has not shown that there is a reasonable probability that the outcome of the proceeding would have been different had trial counsel [pursued the motion to suppress] differently. . . . He therefore has not shown that he was prejudiced by

9

counsel's performance, and his claim of ineffective assistance of counsel fails."

*Robinson v. State*, 329 Ga. App. 562, 564 (765 SE2d 715) (2014) (citation and punctuation omitted).

*Judgment affirmed. Brown and Markle, JJ., concur.*